**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Servpro Industries Incorporated, et al., | No. CV-17-00862-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Zerorez of Phoenix LLC, et al., | |
| Defendants. | |

Since 2003, Servpro Industries Inc. has used its registered trademark "Like it Never Even Happened" in advertising its restoration and cleaning services. For approximately three months in early 2017, Zerorez of Phoenix LLC used the phrase "Like it Never Happened" in its advertisements for carpet cleaning services. Servpro believes those advertisements infringed its trademark as a matter of law. Zerorez believes consideration of the larger context shows it did not infringe the trademark as a matter of law. Zerorez is correct.

## BACKGROUND

For purposes of resolving the motion for summary judgment filed by Zerorez, the Court describes the record in the light most favorable to Servpro. Fortunately, most of the relevant facts are undisputed.

### A. Servpro's Business and Advertising

Servpro "is one of the world's largest providers of cleanup and restoration products and services." (Doc. 1 at 4). Servpro has more than 1,700 franchisees operating

in the United States with eighteen franchisees in the Phoenix area. Servpro describes the services its franchisees offer as "carpet, furniture and drapery cleaning services; restoration of building structures damaged by fire, water and other catastrophes both indoors and outdoors; restoration of furniture damaged by fire, water and other catastrophes; and mold remediation services." (Doc. 1 at 5).

In marketing its services, Servpro uses a "House Logo" as "the primary identifier for the company." (Doc. 79-1 at 65). Servpro's House Logo is:



In addition to its House Logo, Servpro also uses a phrase it describes as its "Brand Descriptor." That phrase is usually portrayed as:

Fire & Water - Cleanup & Restoration™

In advertisements, the Brand Descriptor is usually "positioned below the SERVPRO House Logo." (Doc. 79-1 at 70).

Finally, Servpro uses what it calls a "Branding Statement," which is actually the trademark at issue in this litigation. The trademark is "Like it never even happened." Servpro requires franchisees include the trademark in "[e]very ad and marketing piece . . . except small advertisements where space does not permit." (Doc. 79-1 at 69). Typically, the trademark is placed at the bottom of an advertisement. (Doc. 79-1 at 69). Servpro and its franchisees often include the House Logo, Brand Descriptor, and Branding Statement in advertisements. One such example is:



### B. Zerorez's Business and Advertising

Zerorez Franchising, Inc. "is a carpet, upholstery and hard-surface (e.g. stone and granite] cleaning company." (Doc. 98 at 3). There are numerous Zerorez franchisees throughout the country, one of which is Zerorez of Phoenix LLC ("Zerorez"). Zerorez Franchising differentiates itself from other carpet cleaning services by touting its "patented cleaning system with Empowered Water." Zerorez Franchising describes "Empowered Water" as an alternative to traditional water and soap mixtures. Zerorez performs cleaning services but does not perform "any restoration services" similar to those provided by Servpro.

Zerorez Franchising owns a number of trademarks, including "Zerorez" and "Empowered Water." The "primary logo" used by Zerorez Franchising and its franchisees is a trademark consisting of three rows of three concentric circles:



All of the Zerorez advertisements in the record include one or more of the trademarks.

### C. Zerorez's Alleged Infringement

On December 7, 2016, a few Zerorez employees attended a marketing meeting. (Doc. 98 at 36). At that meeting, a Zerorez employee suggested "the theme and tagline

'Like it Never Happened.'" The meeting participants agreed to use the phrase in future advertisements. On January 1, 2017, Zerorez updated its website to include the phrase on its homepage. From January 1 to March 27, 2017, visitors to the homepage encountered the following:



Of particular importance, that webpage included the "primary logo," two instances of "Zerorez," one instance of "Zerorezified," and one instance of "Empowered Water." From January 16 through March 27, 2017, Zerorez also used the "Like it Never Happened" phrase on billboard advertisements such as:



Again, that billboard prominently features the primary logo and the Zerorez name. Zerorez also used the "Like it Never Happened" phrase in radio ads, on its Facebook page, and on a direct mail postcard. The radio ads included Zerorez's name. The Facebook page and direct mail postcard used Zerorez's name and its primary logo.

Shortly after Zerorez started using "Like it Never Happened," a Zerorez employee saw two Servpro employees wearing shirts with the Servpro House Logo and "Like it never even happened." (Doc. 98 at 48). The Zerorez employee sent a text message to other Zerorez employees stating "I just saw some Serve Pro [sic] guys. Their shirts say 'like it never even happened.' It's trademarked. We aren't using the 'even' but do we want to get that close?" Another Zerorez employee responded "Clorox cleanup has a commercial titled. Like it never happened." Another employee stated they had researched the issue and concluded the Zerorez "version was safe." (Doc. 83-3 at 14). Zerorez continued to use the phrase.

In late February 2017, Servpro learned Zerorez was using the phrase. On March 23, 2017, Servpro filed the present case, accusing Zerorez of infringing its trademark under federal law and unfair competition under Arizona law. The parties pursued discovery and in June 2018, they filed cross-motions for summary judgment.

## ANALYSIS

The parties' motions focus on Servpro's claim for trademark infringement under

federal law but the federal and state law claims all share a common requirement. For Servpro to prevail on any of its claims, it must prove Zerorez's use of the phrase was "likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (federal trademark law requires likelihood of consumer confusion); *Angel's Gate Inc. v. All-Star Grand Canyon Tours Inc.*, No. CV-12-08181-NVW, 2013 WL 12114580, at *3 (D. Ariz. Sept. 30, 2013) (state unfair competition requires likelihood of consumer confusion). If use of the phrase did not create a likelihood of consumer confusion, Zerorez is entitled to summary judgment on all of Servpro's claims. Therefore, the likelihood of confusion is the appropriate focus.

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). This requires the confusion "be probable, not simply a possibility." *Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996). Here, the relevant inquiry is whether, viewing the record in the light most favorable to Servpro, a reasonable consumer seeing or hearing Zerorez's use of the phrase "Like it Never Happened," would mistakenly conclude Zerorez had some association with Servpro.

In 1979, the Ninth Circuit promulgated an eight-factor test to guide the likelihood of confusion analysis. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Since promulgating that test, the Ninth Circuit has repeatedly stressed the eight factors should be viewed as providing a general framework for determining the relevant question. Thus, applying the eight factors "is not like counting beans." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009). The eight-factor test is meant only as "an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation*, 638 F.3d at 1145. And while some of the "factors are much more important than others . . . the relative importance of each individual factor [is] case-specific." *Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th

Cir. 1999). *See also Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) (noting the eight factors "are not exhaustive and other variables may come into play depending on the particular facts presented"). Accordingly, in evaluating the eight factors, the Court must consider "the analysis as a whole" and determine what a holistic view of the evidence "reveals about the ultimate question" of consumer confusion. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).

### 1. Strength of the Mark

The first factor is the strength of the mark. "The scope of the trademark protection that [courts] give marks depends upon the strength of the mark, with stronger marks receiving greater protection than weak ones." *Entrepreneur*, 279 F.3d at 1141. "This 'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Assessing "conceptual strength" requires locating the trademark on the "spectrum of increasing inherent distinctiveness." *Id.* And assessing "commercial strength" requires determining "the strength of the mark in the marketplace." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009).

A mark's conceptual strength "is determined by its placement on a continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful' awarded maximum protection." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). Identifying the exact boundaries of these categories is difficult because "[c]ategorizing trademarks is necessarily an imperfect science." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1033 (9th Cir. 2010). But it is clear that Servpro's mark is not generic because it does not "give the general name of the product" or "embrace an entire class of products." *Entrepreneur*, 279 F.3d at 1141 n.2. It is also clear that the mark is not "arbitrary" or "fanciful." That is, the mark "Like it never even happened" is not "arbitrary" because it has some connection to Servpro's services and it is not "fanciful" because it is not a phrase "invented solely to function as a trademark."

*Id.* Thus, the mark must be either "descriptive" or "suggestive."

In general, a descriptive mark "directly describe[s] the quality or features of the product" while "[a] suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *Brookfield*, 174 F.3d at 1058 n. 19. In context, Servpro's mark could qualify as either. It is unnecessary to more precisely classify the mark because both descriptive and suggestive marks are "inherently" weak. *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991). And the mark's inherent weakness weighs against a likelihood of confusion.

The conceptual weakness of Servpro's mark is exacerbated by the fact that the mark is a common phrase in the context of cleaning. As explained in a leading treatise, "[u]ndoubtedly, common phrases and bits of slang which are in routine everyday use are relatively weak as trademarks simply because their common occurrence makes it difficult for them to stand out as source identifiers." *McCarthy on Trademarks and Unfair Competition* 11:87 (4th ed.). Zerorez submitted evidence that "like it never happened" is commonly used in the context of cleaning services or products. Servpro claims that evidence is inadmissible because the documents have not been "authenticated" and the documents contain "hearsay within hearsay." (Doc. 98 at 57). The documents may or may not be admissible at trial. But more importantly, the Court does not need to rely on Zerorez's evidence to observe "like it never even happened" is a common phrase people use in the context of cleaning. *See, e.g.*, *State v. Oberender*, No. A14-0477, 2014 WL 3892708, at *1 (Minn. Ct. App. Aug. 11, 2014) (citing testimony of individual who believed completion of probation would mean his record "could be clean like it never even happened"). And a phrase that "has been part of the American vernacular for decades" makes for a very weak trademark.[1] *Isle of Capri Casinos, Inc. v. Flynt*, No.

---

[1] Servpro has trademarked a variety of basic statements and then attempted to enforce its trademark rights against potential competitors. For example, Servpro sued Zerorez Franchising Systems in Tennessee after a Zerorez franchisee used the phrase "Here to Help." *Servpro Intellectual Prop., Inc. v. Zerorez Franchising Sys., Inc.*, No. 3:17-CV-00699-JPM, 2018 WL 3364372, at *1 (M.D. Tenn. July 9, 2018).

2:16-CV-06148-CAS (MRWX), 2016 WL 6495380, at *4 (C.D. Cal. Nov. 1, 2016).

Moving beyond the mark's "conceptual strength," the Court must also consider the mark's "commercial strength." That requires taking "into account a mark's actual marketplace recognition." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1034 (9th Cir. 2010). While evidence of actual consumer recognition likely would be best, marketplace recognition can also be established through evidence of "extensive advertising, length of exclusive use," and a large amount of sales. *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989) (noting "descriptive or suggestive mark may be strengthened" through advertising etc.).

Servpro has used the mark in millions of dollars of advertising and has had billions in sales since it started using the mark. The available evidence, however, indicates that the mark was always used in conjunction with Servpro's other marks. And Servpro's own documentation identifies its "House Logo" as its primary identifier. Therefore, while the mark was "strengthened" through Servpro's advertising and sales, it was always accompanied by other marks, meaning the mark had less source-identifying ability than if it had been the primary focus of the marketing expenditures. Accordingly, the alleged "commercial strength" of the mark is less than one might expect when there are millions of dollars in advertisements and billions of dollars in sales.

Given the conceptual weakness of the mark and the way in which it was used in the marketplace, the mark is very weak. The first factor weighs strongly against a finding of likelihood of confusion.

**2. Proximity or Relatedness of the Goods or Services**

The second factor involves the similarity in the goods or services provided by Servpro and Zerorez. When two entities provide similar services, there may be a greater likelihood of confusion because consumers might "mistakenly assume there is an association between" the two entities. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011). Alternatively, "the proximity of goods [might] become less important if advertisements are clearly labeled or consumers

exercise a high degree of care, because rather than being misled, the consumer would merely be confronted with choices among similar products." *Id.* In other words, the fact that entities provide similar services can support or weaken the likelihood of confusion, depending on the context.

Servpro and Zerorez provide overlapping services but they are not entirely interchangeable. While Servpro is adamant that it provides carpet cleaning services that compete directly with Zerorez, there is no real dispute that Servpro's business focuses on the much broader category of restoration services. For example, Zerorez submitted evidence that 98% of Servpro's revenue comes from services other than carpet cleaning while Zerorez only performs carpet cleaning and closely related services such as hard surface cleaning.[2] Thus, while the parties provide the same services, Servpro overwhelming targets and serves a different population than Zerorez. Given that consumers interested in restoration services due to a fire or flood are distinct from consumers interested in basic carpet cleaning, Servpro and Zerorez do not provide meaningfully overlapping services. This factor, therefore, weighs against a likelihood of confusion.

### 3. Similarity of the Marks

The third factor is similarity of the marks. The Ninth Circuit has instructed that "[s]imilarity is best adjudged by appearance, sound, and meaning." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010). Crucially, however, a court must also take into account how the marks "appear in the marketplace."

The "appearance, sound, and meaning" of the mark and the phrase Zerorez used are effectively the same. Zerorez did not use the word "even" but that is a minor change

---

[2] Servpro objects to the 98% figure as inadmissible but it is based on documents produced by Servpro. Servpro claims the relevant numbers were "generated by Servpro's system based on information provided to Servpro by third parties (Servpro's Arizona franchisees)" and "Servpro does not prepare the numbers and does not verify that any particular number was reported accurately." (Doc. 98 at 7). Servpro does not explain why it is entitled to produce documents as responsive to discovery requests and then disclaim the authenticity of those documents when they are not helpful to its case. Therefore, the Court will consider the 98% figure.

- 10 -

that did not alter the meaning of the phrase. Thus, it would appear that this factor supports a finding of likelihood of confusion. But the Ninth Circuit has instructed courts to assess the similarity of the marks in the context of how consumers encountered them.

The mark and Zerorez's use of the similar phrase were experienced very differently in the marketplace. Servpro used its mark in advertising but always included its other marks. Servpro has not cited any instances where it used "Like it never even happened" as a standalone mark meant to identify its services. As for Zerorez, all of the advertisements using "Like it Never Happened" also contained its own name and other marks, such as Zerorez's primary mark of six concentric circles. In these circumstances, the mark and very similar phrase were used as secondary identifiers for the businesses. This is very similar to the situation in *Cohn v. Petsmart*, 281 F.3d 837 (9th Cir. 2002).

In *Cohn*, a veterinarian had named his business the "Critter Clinic" and "began advertising it as a place 'Where Pets are Family." *Id. at 839.* Shortly thereafter, "Petsmart began using the same slogan to promote its national chain of pet supplies stores." *Id.* After the veterinarian sued Petsmart for trademark infringement, the district court granted summary judgment to Petsmart by concluding there was no likelihood of confusion. The veterinarian appealed.

The Ninth Circuit evaluated the veterinarian's claim using the eight-factor test. In reviewing the factor addressed to the similarity of the marks, the Ninth Circuit noted that "although the parties superficially use the identical slogan as a trademark, consumers will actually encounter the trademarks differently in the marketplace." *Id.* at 842. In the Ninth Circuit's view, the veterinarian and Petsmart used the slogan "merely as a tagline to their distinctive business names: as 'Critter Clinic—Where Pets are Family,' and "Petsmart—Where Pets are Family." *Id.* at 842. There was no likelihood of confusion because both parties had emphasized their "housemarks," *i.e.* "Critter Clinic" and "Petsmart," and not the trademarked slogan. In other words, the emphasis on the "housemarks" meant "[t]he names 'Petsmart' and 'Critter Clinic' present[ed] the dominant commercial identity" such that usage of the same slogan could not have been

- 11 -

confusing. *Id.*

Just like in *Cohn*, consumers in the market encountered Servpro's mark and Zerorez's phrase in different ways. "Like it never even happened" and "Like it never happened" were always accompanied by other obvious indications of the entity behind the usage. That is, consumers encountered the mark or phrase only in conjunction with the "dominant commercial identity" of the underlying entity. *Id.* This means that, despite the mark and phrase being very similar, the manner in which consumers actually encountered the mark or phrase weighs strongly against any likelihood of confusion.

### 4. Evidence of Actual Confusion

The fourth factor involves evidence of actual consumer confusion. Servpro presents no such evidence. Generally, this factor should be given little weight. *Cohn*, 281 F.3d at 842. But given the amount of advertising and sales Servpro cites as evidence of the strength of its mark, it is curious that no evidence of actual confusion was submitted. Therefore, this factors weighs slightly against a finding of likelihood of confusion.

### 5. Marketing Channels Used

The fifth factor requires looking to the marketing channels used by Servpro and Zerorez. In general, two entities using the same marketing channels increases the likelihood of confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). This factor is most helpful when the two entities belong to a niche market and advertise in specialized outlets, such as trade magazines. *Id.* But this factor "does not shed much light on the likelihood of consumer confusion" when the two entities use standard channels, such as television, radio, and Internet. *Id.* Here, Servpro and Zerorez both used radio, billboards, and the Internet. There is no evidence that either party advertised in specialized outlets. Therefore, this factor merits little weight.

### 6. Degree of Care Consumers are Likely to Exercise

The sixth factor requires assessing the nature of the goods or services and the type

of consumer who would be interested in those goods or services. Generally, consumers are expected to proceed with more care if the goods or services are specialized or of uncommon importance. For example, "highly specialized professional purchasers" responsible for the purchase of drawer mechanisms were "expected to exercise a high degree of care." *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989). Also, "reasonably attentive pet owners" were expected to "be particularly attentive in selecting a veterinarian for their family pets." *Cohn*, 281 F.3d at 843. Consumers making impulsive purchasing decisions, however, are not expected to exercise much care. *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 981 (N.D. Cal. 2006).

Here, carpet cleaning services are not sold to professional purchasers, meaning it would be inappropriate to impose a "high degree of care." *Accuride*, 871 F.2d at 1537. But "[c]arpet cleaning is not an impulsive decision or a quick purchase off the shelf." *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1044 (D. Minn. 2015). Moreover, "carpet cleaning requires a technician to enter the consumer's home to perform the service." *Id.* This "elevates the ordinary purchaser's degree of care." *Id.* While perhaps not as important as selection of a veterinarian, selection of a carpeting cleaning service requires a moderate amount of care. The elevated degree of care weighs against a likelihood of confusion.

Beyond the nature of the goods or services, there is also a general rule that there is less likelihood of confusion as the goods or services increase in cost. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). The Ninth Circuit has not explained what qualifies as "expensive" versus "inexpensive," but has offered a variety of examples. Watches costing "several hundred dollars" qualify as expensive. *Multi Time*, 804 F.3d at 937. Public relations services costing thousands of dollars are expensive. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1152 (9th Cir. 2002). Wine, cheese, and mushrooms are inexpensive. *E. & J. Gallo v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992); *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d

1085, 1096 (9th Cir. 2013)). As are "single-serve beverages like . . . juices or . . . energy drink[s]." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127 (9th Cir. 2014).

Here, the cost of the services is relatively expensive, ranging in the hundreds of dollars. This cost places the services towards the end of the spectrum where consumers are expected to exercise more care, weighing against a likelihood of confusion.

Both the nature of the services and the price of the services establish consumers will exercise care when making their decisions. This factor, therefore, weighs against a likelihood of confusion.

### 7. Zerorez's Intent in Selecting the Mark

The seventh factor requires assessing why Zerorez started using the phrase. Because it can be difficult to locate evidence of a party's motive, the Ninth Circuit has adopted a presumption that governs when an alleged infringer is aware of the trademark before using a similar mark or phrase. "When one party knowingly adopts a mark similar to another's, reviewing courts presume that the defendant will accomplish its purpose, and that the public will be deceived." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991). There is no clear evidence Zerorez knew of Servpro's mark before Zerorez decided to use the "Like it never happened" phrase. But it is undisputed Zerorez learned of Servpro's mark shortly after Zerorez began using the phrase. And after learning of the mark, Zerorez did not immediately stop using the phrase.

When confronted with a situation where there was no evidence an alleged infringer knew of the mark prior to starting to use an identical phrase, but the alleged infringer continued to use the phrase even after learning of the mark, the Ninth Circuit concluded the factor regarding the alleged infringer's intent was "essentially neutral." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002). Based on that conclusion, the factor is also neutral in this case.

### 8. Likelihood of Expansion of Product Lines

The final factor involves the likelihood that the alleged infringer will expand its

business to compete with the mark holder. Servpro argues it and Zerorez "already compete to a significant extent." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). If that were the case, the likelihood of expansion factor would have little weight. *Id.* But as set forth above, it is not accurate to say Servpro and Zerorez significantly compete. Their services overlap, but only at the margins. Despite the lack of substantial overlap, this factor is still entitled to little weight because Servpro has offered no evidence that it plans to target home carpet cleaning in the future and Zerorez has no plans to expand and offer restoration services. Thus, this factor is entitled to little weight.

### 9. Summary of Factors

Keeping in mind that the eight factors should not be evaluated in a mechanical fashion, most of the factors weigh against there being a meaningful probability of consumer confusion. And a few of the factors are so strong as to be sufficient on their own. In this case, the most important factors are the strength of the mark and the way in which consumers encountered the mark and the phrase. The mark is very weak. It has little conceptual strength and is a common phrase in the context of cleaning. Moreover, while the mark and the phrase are essentially identical, neither Servpro nor Zerorez relied on the mark or phrase as their primary identifier. In advertising, "Like it never even happened" was always accompanied by obvious indications that Servpro was the relevant business while "Like it never happened" was always accompanied by obvious indications that Zerorez was the relevant business. In these circumstances, viewing the record in the light most favorable to Servpro, consumer confusion was, at best, merely theoretically possible. To avoid summary judgment Servpro needed to establish a reasonable jury could conclude confusion was "probable, not simply a possibility." *Cohn v. Petsmart*, 281 F.3d 837, 842 (9th Cir. 2002). Servpro did not do so.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 81, 89) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants.

This Order shall not be sealed.

**IT IS FURTHER ORDERED** the Motion for Summary Judgment (Doc. 78) is **DENIED**.

Dated this 7th day of September, 2018.

_____
Honorable Roslyn O. Silver
Senior United States District Judge